IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Matthew E. Petro, :
               Petitioner :
               :
         v. : No. 1446 C.D. 2014
               : No. 1447 C.D. 2014
Unemployment Compensation : Submitted: June 12, 2015
Board of Review, :
              Respondent :


BEFORE:    HONORABLE BERNARD L. McGINLEY, Judge
               HONORABLE MARY HANNAH LEAVITT, Judge
               HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE LEAVITT                            FILED:  October 19, 2015

        Matthew Petro (Claimant) petitions for review of two adjudications of the Unemployment Compensation Board of Review (Board) dismissing his appeals of two determinations of the UC Service Center that Claimant was not entitled to seven months of unemployment benefits he had received before being recalled to work by his employer. The UC Service Center determined Claimant had to repay the benefits he collected and pay a penalty because he had stated on his application that his employer laid him off. Claimant appealed, but the Board held that Claimant's appeals were untimely under Section 501(e) of the Unemployment Compensation Law (Law), 43 P.S. §821(e).[1] For the reasons that follow, we

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §821(e). Section 501(e) states, in relevant part:
**(Footnote continued on the next page . . .)**

vacate the Board's orders and remand for further development of the record on the question of whether there has been a breakdown in the administrative process.

Claimant was employed as an Internet Manager by Infiniti of Willow Grove (Employer). In January 2013, Employer disciplined Claimant for surfing the Internet on company time by demoting him to salesman. The next month, Employer laid off Claimant because of slow sales. Claimant applied for and received unemployment benefits beginning on February 26, 2013. On September 11, 2013, Claimant applied for and received federal Emergency Unemployment Compensation (EUC) benefits.[2] The UC Service Center approved both applications.

In October 2013, Employer recalled Claimant from the layoff, and Claimant stopped filing for benefits. Employer filed a request for relief from unemployment compensation charges. In response, in January 2014 the UC Service Center requested information from Employer about Claimant's February 2013 separation from employment. The UC Service Center also sent a questionnaire to Claimant with a cover letter that said, "If your separation from employment was due to a voluntary quit or discharge, your employer will also be

---

**(continued . . .)**

> Unless the claimant … files an appeal with the board, from the determination … within fifteen calendar days after such notice was delivered to him personally, or was mailed to his last known post office address, and applies for a hearing, such determination of the department, with respect to the particular facts set forth in such notice, shall be final and compensation shall be paid or denied in accordance therewith.

43 P.S. §821(e).

[2] *See* Title IV of the Supplemental Appropriations Act of 2008, P.L. 110-252, 122 Stat. 2323, Section 4001, 26 U.S.C. §3304 note.

contacted…." Certified Record (C.R.) Item No. 3, January 15, 2014, Letter to Matthew E. Petro, at 1. Claimant did not return the questionnaire; neither circumstance applied to him. Employer's questionnaire stated that it "discharged" Claimant for "surfing the Internet for non-work related purposes and playing online games." C.R. Item No. 4, Employer Questionnaire, January 27, 2014, at 1.

Based on Employer's questionnaire, the UC Service Center issued two determinations. The first held that Claimant was not eligible for the benefits he began receiving on February 26, 2013; the second held that Claimant was not eligible for the EUC benefits he began receiving on September 11, 2013. The UC Service Center found that Employer discharged Claimant in February 2013 for willful misconduct, which rendered him ineligible for unemployment under Section 402(e) of the Law, 43 P.S. §802(e).[3] The UC Service Center also held that because of Claimant's "fault" in collecting approximately seven months of compensation, he had to pay back those benefits under Section 804(a) of the Law, 43 P.S. §874(a).[4] Finally, the UC Service Center imposed a penalty upon Claimant

---

[3] Section 402(e) states that a claimant is ineligible for unemployment compensation when "his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is 'employment' as defined in this act." 43 P.S. §802(e).

[4] Section 804(a) of the Law provides, in relevant part:

> *Any person who by reason of his fault has received any sum as compensation under this act to which he was not entitled, shall be liable to repay* to the Unemployment Compensation Fund to the credit of the Compensation Account a sum equal to the amount so received by him and interest at the rate determined by the Secretary of Revenue as provided by section 806 of the act of April 9, 1929 (P.L. 343, No. 176), known as "The Fiscal Code," per month or fraction of a month from fifteen (15) days after the Notice of Overpayment was issued until paid. Such sum shall be collectible (1) in the manner provided in section 308.1 or section 309 of this act, for the collection of past due contributions, or (2) by deduction from any future compensation payable to the claimant under this act[.]

**(Footnote continued on the next page . . .)**

3

under Section 801(b) of the Law, 43 P.S. §871(b).[5]  Each notice of determination informed Claimant he had 15 days to appeal, making Claimant's appeal deadline February 13, 2014.  Claimant appealed the notices by facsimile on February 19, 2014.

The appeals were consolidated and assigned to a Referee, who held a hearing on April 23, 2014.  Claimant, appearing *pro se*, testified on his own behalf.  Employer did not participate.  Claimant explained that he had been demoted to salesman, but not discharged, for surfing the Internet.  He was subsequently laid off because Employer's sales could not support five salesmen.  When sales picked up, Employer called him back to work in October of 2013.

The Referee questioned Claimant regarding why his appeal was late and received the following explanation:

---

**(continued . . .)**
43 P.S. §874(a) (emphasis added).

[5] Section 801(b) states:

> *Whoever makes a false statement knowing* it to be false, or knowingly fails to disclose a material fact to obtain or increase any compensation or other payment under this act or under an employment security law of any other state or of the Federal Government or of a foreign government, may be disqualified in addition to such week or weeks of improper payments for a penalty period of two weeks and for not more than one additional week for each such week of improper payment: Provided, That no additional weeks of disqualification shall be imposed under this section if prosecution proceedings have been instituted against the claimant because of such misrepresentation or non-disclosure.  The departmental determination imposing penalty weeks under the provisions of this subsection shall be subject to appeal in the manner provided in this act for appeals from determinations of compensation.  The penalty weeks herein provided for shall be imposed against any weeks with respect to which the claimant would otherwise be eligible for compensation, under the provisions of this act, which begin within the four year period following the end of the benefit year with respect to which the improper payment or payments occurred.

43 P.S. §871(b) (emphasis added).

4

[Referee]: Did you make any attempt to file any sooner than February 19?

[Claimant]: [I d]id not. [I d]id not realize -- I did not realize that I had to appeal this. And the reason for it is because I've gotten paid under my unemployment and I did not know I was getting basically charged back for my whole unemployment.

[Referee]: Well, you received the Determination, right?

[Claimant]: I did not. This is -- my issue is I didn't open the Determination because I thought it was tax information from Unemployment and I put it in my tax file, did not open it. And I did open it on I believe February 18 and I did immediate action on it.

\*\*\*

[Referee]: Okay. So is there any reason -- you just -- you assumed that they were part of information regarding your taxes, is that what you…

[Claimant]: Yes. Because it was the beginning of January. I'm sorry, the end of January. It was the end of January, was the…

[Referee]: Okay. But you're sure that they were there sitting waiting for you? Did you make a stack in your office or something or…

[Claimant]: I have a stack at home, yes. I have a stack at home that -- of all my tax records.

C.R. Item No. 13, Notes of Testimony, April 23, 2014, at 6 – 7.

Although Employer did not participate in the hearing, it did send a letter requesting the Referee "consider all paperwork previously submitted by the employer" in rendering a decision. C.R. Item No. 12, at 1.[6] On April 29, 2014,

---

[6] It is unclear what other paperwork Employer was referencing. The only other relevant paperwork of record is Employer's questionnaire, which stated that Claimant was discharged for willful misconduct. This is particularly confusing because Employer's letter to the Referee also
**(Footnote continued on the next page . . .)**

and May 1, 2014, the Referee issued two decisions holding that Claimant's appeals were untimely. Employer then wrote to the Board that Claimant's separation from employment on February 22, 2013, was due to a lack of work and that its earlier report that it was due to misconduct was incorrect. C.R. Item No. 17, Exhibit A. On July 23, 2014, the Board affirmed the Referee's decisions. Claimant then petitioned for this Court's review.[7]

On appeal,[8] Claimant argues that the Board erred in denying his appeal *nunc pro tunc* because there was a breakdown in the administrative process. That breakdown consisted of the UC Service Center twice approving his application for benefits without any objection from Employer. One year later, after benefits had ceased, Employer submitted inaccurate information about the reason for his February 2013 separation from employment. Further, Employer acknowledges that its information was inaccurate. There was no misrepresentation on Claimant's part. The Department's delays in considering his eligibility for unemployment compensation created a breakdown in the administrative process.

---

**(continued . . .)**
implies that Employer had previously informed the UC Service Center that Employer made a mistake in its questionnaire regarding the reason for Claimant's separation from employment. However, Employer's only documentation of its error is a letter it provided to the Board *after* the Referee had issued his decision. In that letter, Employer wrote: "Please be advised that [Claimant's] employment was terminated on February 22, 2013 due to lack of work. It was erroneously reported earlier that his employment was terminated due to misconduct." C.R. Item No. 17, Exhibit A. Thus, without knowing the full extent of the paperwork submitted by Employer prior to the Referee hearing, we cannot ascertain when Employer corrected its mistake.

[7] On October 16, 2014, this Court consolidated Claimant's appeals.

[8] Our review is to determine whether an error of law was committed, the findings of fact are supported by substantial evidence or Claimant's constitutional rights were violated. *Miller v. Unemployment Compensation Board of Review*, 83 A.3d 484, 486 n.2 (Pa. Cmwlth. 2014).

6

Section 501(e) of the Law requires that an appeal from a notice of determination be filed within 15 days from the date the notice was delivered to the claimant. 43 P.S. §821(e).[9] However, appeals can be accepted *nunc pro tunc*, or "now for then," after the 15-day period under certain narrow circumstances. *Hessou v. Unemployment Compensation Board of Review*, 942 A.2d 194, 198 (Pa. Cmwlth. 2008). An appeal *nunc pro tunc* will be allowed where the late filing is caused by extraordinary circumstances involving fraud, a breakdown in the administrative process, or non-negligent conduct of the claimant or his counsel. *Cook v. Unemployment Compensation Board of Review*, 671 A.2d 1130, 1131 (Pa. 1996).

A breakdown in the administrative process occurs when "an administrative board or body is negligent, acts improperly or unintentionally misleads a party." *Union Electric Corporation v. Board of Property Assessment, Appeals and Review of Allegheny County*, 746 A.2d 581, 584 (Pa. 2000). In the context of unemployment compensation appeals, an administrative breakdown occurs when, for example, "a referee's decision is mailed to an incorrect address; adequate assistance is not provided to a claimant with cognitive impairment; or, an official misleads a litigant as to the proper procedure for filing an appeal." *Hessou*, 942 A.2d at 198.

Here, there are gaps in the record that impede meaningful, effective appellate review. According to the Board, Claimant was issued a UC-44 determination that found Claimant eligible for benefits because the Department "received no information from Employer to the contrary." Board Brief at 8. After

---

[9] *See* fn.1, *supra*.

Claimant returned to work with Employer, Employer "filed a request for relief from charges on October 7, 2013." *Id.* Neither the UC-44 nor the request for relief from charges is in the record. A letter from Employer to the Referee was introduced at the Referee's hearing. The letter implies that Employer notified the Department in an effort to correct the mistake it made on the questionnaire with respect to the reason for Claimant's separation from employment in February 2013. The record contains no records from 2013 that might explain why the UC Service Center did not hear an objection from Employer on Claimant's application when it was submitted in February 2013. The Department's 2014 questionnaire to Claimant asked about his separation from employment, which was confusing because it was sent at a time when he was once again employed full-time by Employer.

A discharge is permanent and, therefore, different from a layoff. Indeed, Employer stated, apparently, on its relief from charges that Claimant had been recalled to work. This suggests that Claimant had been laid off, which is inconsistent with Employer's statement on the January 2014 questionnaire that Claimant had been discharged.

A complete record is needed, including the request for relief from charges; the information submitted by Employer to the UC Service Center when Claimant applied for unemployment benefits in February 2013; and the paperwork referenced in Employer's letter to the Referee. As the record currently stands, we are unable to ascertain whether there was a breakdown in the administrative process to allow Claimant to appeal *nunc pro tunc*. Remand is the appropriate remedy when effective appellate review cannot be done. *Fontana v.*

8

*Unemployment Compensation Board of Review*, 454 A.2d 678, 679 (Pa. Cmwlth. 1983).

Accordingly, we vacate the Board's orders and remand this matter for the Board to further review the procedures followed in Claimant's case and, if necessary, remand to a Referee to develop a more complete record. The Court will retain jurisdiction.

_____
MARY HANNAH LEAVITT, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Matthew E. Petro, : 
          Petitioner : 
           : 
       v. : No. 1446 C.D. 2014
           : No. 1447 C.D. 2014
Unemployment Compensation : 
Board of Review, : 
          Respondent : 

# **O R D E R**

AND NOW, this 19th day of October, 2015, the orders of the Unemployment Compensation Board of Review dated July 23, 2014, in the above-captioned matter are hereby VACATED and this matter is REMANDED to the Board for further proceedings consistent with the Court's opinion.

      Jurisdiction is retained.

 

_____
MARY HANNAH LEAVITT, Judge